# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

IN THE MATTER OF THE SUBPOENAS
SERVED ON JOHN VONBERG AND
HUGO ZAGARIA

MISCELLANEOUS NO.: 4:13-mc-02393

IN RE: CRUDE OIL COMMODITY
FUTURES LITIGATION, CASE NO.:
11-Civ.-3600 (WHP) (Pending in the United
States District Court for the Southern District
of New York)

## DECLARATION OF ARMITA S. COHEN

I, Armita S. Cohen, state as follows:

1.      I am an attorney at the law firm of Vinson & Elkins LLP, counsel for Plains All American Pipeline, L.P. ("Plains"). The matters set forth herein are true and correct based upon my own personal knowledge, and if called as a witness, I could and would testify competently thereto.

2.      Parnon Energy, Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose, and James T. Dyer are defendants in two related actions pending in the United States District Court for the Southern District of New York ("SDNY"): *In re: Crude Oil Commodity Futures Litig.,* No. 11-cv-3600 (the "Class Action"), and *U.S. Commodity Futures Trading Commission v. Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose and James T. Dyer*, No. 11 Civ. 3543 (the "CFTC Action").

3.      Plains previously received and cooperated with a number of requests ("Requests") issued by the CFTC relating to the U.S. Commodity Futures Trading Commission's ("CFTC")

1

national crude oil investigation. A true and correct copy of a declaration by Lawrence J. Dreyfuss, Vice President, Associate General Counsel and Assistant Secretary of Plains, describing the Requests and Plains' response thereto is attached as Exhibit A to this declaration.

4. Plains has filed a Motion to Intervene and Motion for a Protective Order in the CFTC Action to prevent the disclosure of Plains' information in the Class Action. Plains' Motion is pending before the Court. *See* CFTC Action, Dkt. 88; Class Action, Dkt. 117.

5. Plains has additionally requested a modification to the protective order in the CFTC Action to limit the disclosure of its materials in that action. A true and correct copy of a letter from Hilary Preston, Counsel for Defendants and the CFTC to the Honorable Judge William Pauley dated July 18, 2013 summarizing Plains' request is attached hereto as Exhibit B.

6. On October 2, 2013, Defendants issued the Subpoenas to John vonBerg and Hugo Zagaria of Plains in connection with the Class Action. True and correct copies of the Subpoenas are attached as Exhibits C and D to this Declaration.

7. On October 8, 2013, I spoke via telephone with Ms. Elizabeth Bradshaw, counsel for Defendants, to discuss the Subpoenas, including the information Defendants intended to seek in the depositions. On that call, Ms. Bradshaw stated that Defendants are seeking this discovery to support their opposition to class certification, which is due on October 25, 2013. Ms. Bradshaw further stated that Defendants intend to focus at the depositions on information Plains provided the CFTC in connection with its investigation, including the sworn testimony Messrs. vonBerg and Zagaria provided the CFTC in August 2010. Ms. Bradshaw also stated that other topics may be covered at the deposition, as well as documents, and that Defendants were not required to advise Plains in advance of the deposition of all of the topics that would be covered.

8.    I have informed Ms. Bradshaw that Mr. vonBerg is unavailable for a deposition on October 15, 2013 and that counsel is unavailable on October 16, 2013.

I declare under penalty of perjury that the foregoing statements made by me are true and correct.

Executed on October 14, 2013

3

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

U.S. COMMODITY FUTURES TRADING
COMMISSION,
                              Plaintiff,

        v.

PARNON ENERGY INC., ET AL.,
                              Defendants.

No. 11 Civ. 3543 (WHP)

AND

---

IN RE: CRUDE OIL COMMODITY
FUTURES LITIGATION

This Document Relates To:
   All Actions

MASTER FILE
No. 11 Civ. 3600 (WHP)

---

## DECLARATION OF LAWRENCE J. DREYFUSS

I, Lawrence J. Dreyfuss, state as follows:

1.       I am the Vice President, Associate General Counsel and Assistant Secretary of Plains All American Pipeline, L.P. ("Plains").  I am submitting this affidavit on behalf of Plains in support of Plains' Motion to Intervene and Motion for a Protective Order, filed June 21, 2013. I am qualified as a result of my position with Plains to make this affidavit.

1

2.    Plains, through its counsel, Vinson & Elkins LLP, has been informed by the CFTC that the Putative Class Plaintiffs in *In re Crude Oil Commodity Futures Litigation*, 11 Civ. 3600 (S.D.N.Y.) (the "Class Action") have submitted requests for the production of documents to Defendants.  A copy of those requests are attached as Exhibit A to this Declaration.

3.    Putative Class Plaintiffs' document request number 135 seeks production of, in pertinent part, all documents the CFTC has produced to Defendants in *U.S. Commodity Futures Trading Commission v. Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose and James T. Dyer*, No. 11 Civ. 3543 (S.D.N.Y.) (the "CFTC Action").

4.    Beginning in 2008, Plains received, and cooperated with, a number of voluntary requests and subpoenas issued by the CFTC related to the CFTC's national crude oil investigation.  Plains also made employee witnesses available for deposition by the CFTC. Plains cooperated in good faith with the CFTC's investigation.  Plains' production of documents and other information to the CFTC was not without extreme reservation and concern for the protection of its confidential and proprietary information.  Plains provided that highly proprietary information with the understanding that it would not be disclosed to the public.  Plains timely requested that the CFTC treat Plains' documents and other information confidentially, and it timely filed notices with the CFTC's Freedom of Information Act compliance office that the documents are exempt from disclosure in response to FOIA requests.  To Plains' knowledge, at no time was Plains seen or investigated for violating the Commodities Futures Exchange Act.

5.    The CFTC subsequently notified Plains that certain documents were going to be produced to Defendants and their counsel in connection with the CFTC Action.  Plains understood, and the CFTC provided further reassurances, that the protective order governing the

CFTC Action enabled only one business person for Defendants collectively, as well as Defendants' lawyers, to review Plains' documents.  Plains reluctantly agreed to such limited disclosure in connection with the CFTC's investigation.  Until June 2013, Plains was unaware that the CFTC had also produced to Defendants the deposition transcripts of Plains' senior executives.

6.      Plains has been informed by the CFTC that the documents listed on Exhibit B to this Declaration are the documents Plains produced to the CFTC in the course of the CFTC's investigation, and the CFTC subsequently produced to Defendants in the CFTC Action.

7.      The materials at issue include Plains' confidential customer contracts and pricing; a variety of proprietary business records, committee reports and minutes, many of which discuss company strategy and/or other proprietary information; detailed inventory, pipeline, terminalling, and other types of highly proprietary reports and data; and emails and other internal communications discussing this and other confidential commercial information.  This information is highly confidential, and disclosure or misuse could damage Plains' competitive standing in the storage and terminalling industry, as well as its customer relationships.  The details of this information are not known outside of Plains, except for the particular customers who may be involved.

8.      Plains has taken great steps to guard the secrecy of the information, including, for example, by designating it FOIA-exempt and "Confidential Treatment Requested" during the initial production to the CFTC; designating it "Highly Confidential" under the protective order in the CFTC litigation; and, of course, resisting its disclosure in this non-CFTC litigation.  The value of the information to Plains is extraordinary, as would be its value to Plains' competitors,

hence Plains' strong concerns over production in the CFTC's litigation to Defendants, even with the protections afforded by the governing protective order.

I declare under penalty of perjury that the foregoing statements made by me are true and correct.

Executed on June 21, 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

*In re Crude Oil Commodity Futures  Litigation*

This Document Relates To:

All Actions

MASTER FILE
No. 11 Civ. 3600 (WHP)

---

## PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION DIRECTED TO DEFENDANTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, hereby request that defendants Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, James T. Dyer, and Nicholas J. Wildgoose respond to this Request for Production of Documents and Electronically Stored Information and produce the documents and electronically stored information requested herein within thirty (30) days after service hereof, at the offices of Lovell Stewart Halebian Jacobson LLP, 61 Broadway, Suite 501, New York, New York 10006, or at such other mutually agreeable location; and if any documents are withheld on the basis of any claimed privileged, a detailed privileged log shall be produced as described herein.

## I.    DEFINITIONS

1.    The definitions set forth in Federal Rule of Civil Procedure 34(a) and the Uniform Definitions in Discovery Requests set forth in Local Civil Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York are incorporated herein by reference and are applicable to all requests herein.

2.      All definitions and abbreviations in Plaintiffs' Consolidated Amended Class Action Complaint dated May 29, 2012 [Docket No. 66] have the same meaning in these document requests, unless defined differently herein.

3.      "CFTC" means the Commodity Futures Trading Commission, including any of its departments, committees, subdivisions or individuals or entities acting on its behalf or under its authority.

4.      "Defendants" means Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, James T. Dyer, Nicholas J. Wildgoose, and any of their parents, subsidiaries, officers, directors, employees, agents or independent contractors.

5.      "ICE" means Intercontinental Exchange, Inc., and any of its parents, subsidiaries, affiliates, employees, agents, or persons or entities acting on its behalf or under its control.

6.      "NYMEX" means New York Mercantile Exchange, Inc., and any of its parents, subsidiaries, affiliates, employees, agents, or persons or entities acting on its behalf or under its control.

7.      "Plaintiffs" refers to Gregory Galan, John L. Losordo, Jr., FTC Capital GmbH, Todd Kramer and Adams Affiliates, Inc.

8.      "Relevant Period" means between at least January 1, 2008 and at least May 15, 2008.

9.      "WTI crude oil" means West Texas Intermediate (sometimes also known as Texas light sweet) crude oil.

10.     "WTI crude oil contracts" means NYMEX WTI crude oil futures contracts, options on NYMEX WTI crude oil futures contracts, ICE crude oil derivatives, over the counter

("OTC") crude oil contracts, physical or "spot" crude oil contracts, and any other crude oil derivative contracts. "You" or "your" means each of the Defendants.

## II. INSTRUCTIONS

1.  These discovery requests are continuing in nature so as to require supplemental responses if additional information becomes available or is discovered after filing your responses hereto.

2.  Documents shall be produced regardless of whether they are in your possession or within the control of your attorneys or their agents, employees, representatives, or investigators.

3.  If any portion of any document is responsive to any request, then the entire document must be produced. If any requested document cannot be produced in full, please produce the document to the extent possible, specifying each reason for your inability to produce the remainder of the document.

4.  The time period for every request is the Relevant Period unless otherwise noted.

5.  Unless otherwise agreed, electronically stored information ("ESI") and hard copy documents shall be produced in single page TIFF image format, with extracted text for "ESI" documents and optical character recognition ("OCR") files where extracted text is not available, and corresponding Ringtail compatible load files along with all attendant metadata. Unless otherwise agreed, data files shall be produced in either Microsoft Excel or text delimited format. Electronically stored information shall also be preserved in native format pending resolution of this litigation.

6.  Documents shall be produced in the order in which they appear in your files, and documents shall not be shuffled or otherwise rearranged. Documents that were stapled, clipped, or otherwise fastened together in their original condition shall be produced in such form.

7.    If any responsive document is withheld, in whole or in part, for any reason other than an assertion of a claim of privilege (see Instruction No. 9 below) please set forth separately with respect to each such document withheld:  (a) the rationale, rule or other reasoning relied upon in withholding production of the document; (b) the type of document (*e.g.*, letter, memorandum, etc.); (c) the general subject matter of the document; (d) the date of the document. If in responding to these document requests you claim an ambiguity in interpreting either a particular request or a definition or instruction, that claim shall not be used as a basis for refusing to respond. Instead, you shall set forth as part of your written response the language deemed to be ambiguous and the interpretation used in responding.

8.    All assertions of a claim of any privilege shall be governed by Local Civil Rule 26.2.

9.    If a portion of any responsive document is protected from disclosure by privilege, attorney work product or any other reason, such document must be produced with redaction of the portion claimed to be protected.

10.    If any document requested was, but is no longer, in your possession custody or control, or is no longer in existence, please provide the following information (a) whether it is missing or lost; (b) whether it has been destroyed; (c) whether it has been transferred, voluntarily or involuntarily, to others; or (d) whether it has been otherwise disposed of.  For each foregoing document, explain the circumstances surrounding such disposition, give the date thereof and identify those persons to whom the document was transferred or who has knowledge thereof.

11.    You should produce any and all submissions to the CFTC and NYMEX that include attorney work product or advocacy, as well as all exhibits thereto, in the form submitted to CFTC and/or NYMEX.

III.    **DOCUMENT REQUESTS**

1.      To the extent not already produced, all documents, data and other information produced by the Defendants to the CFTC, NYMEX, or any other investigative body relating to the facts and circumstances surrounding the following action: *U.S. Commodity Futures Trading Commission v. Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose and James T. Dyer,* No. 11 Civ. 3543 (S.D.N.Y.).

2.      All transcripts of any depositions, interviews or other inquiries (and all exhibits thereto) relating to the facts and circumstances surrounding the following action: *U.S. Commodity Futures Trading Commission v. Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose and James T. Dyer,* No. 11 Civ. 3543 (S.D.N.Y.).

3.      All interview notes, internal or external memoranda, internal or external correspondence, internal or external emails and/or instant messages, and the final or most complete report of any advisor(s) or expert(s) retained by you in connection with: *U.S. Commodity Futures Trading Commission v. Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose and James T. Dyer,* No. 11 Civ. 3543 (S.D.N.Y.).

4.      Un-redacted copies of all pleadings, responses, and any other filing of any type or kind (including, without limitation, transcripts) filed or submitted in connection with: *U.S. Commodity Futures Trading Commission v. Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose and James T. Dyer,* No. 11 Civ. 3543 (S.D.N.Y.) (WHP) (filed May 24, 2011).

5.      Documents sufficient to show Defendants' daily positions and trades in NYMEX WTI crude oil futures contracts during the Relevant Period.

6.      Documents sufficient to show Defendants' daily positions and trades in ICE WTI crude oil derivatives contracts during the Relevant Period.

7.      Documents sufficient to show Defendants' daily positions and trades in physical WTI crude oil during the Relevant Period.

8.      Documents sufficient to show Defendants' daily positions and trades in WTI crude oil exchange traded funds during the Relevant Period.

9.      All documents reflecting any purchases of or investments by Defendants in WTI crude oil contracts other than those in Requests Nos. 5-8 above.

10.     All documents reflecting Defendants' strategy, purpose, plan or rationale for purchasing and selling WTI crude oil contracts.

11.     All documents reflecting any explanation for why Defendants made purchases and sales of NYMEX WTI crude oil futures contracts during the Relevant Period.

12.     All documents reflecting any explanation for why Defendants made purchases and sales of ICE WTI crude oil derivatives during the Relevant Period.

13.     All documents reflecting any explanation for why Defendants made purchases and sales of physical WTI crude oil during the Relevant Period.

14.     All documents reflecting Defendants' knowledge, awareness and/or estimates of the deliverable supplies of physical WTI crude oil in or around Cushing, Oklahoma during the Relevant Period.

15.    All documents referencing any intention, consequence of, or transaction to achieve a higher price in respect of NYMEX WTI crude oil futures contracts, physical WTI crude oil, or any other type of WTI crude oil contract.

16.    All documents referencing any intention, consequence of, or transaction to achieve a lower price in respect of NYMEX WTI crude oil futures contracts, physical WTI crude oil, or any other type of WTI crude oil contract.

17.    All documents reflecting telephone calls (or the telephone numbers to which the call was made) concerning purchases or sales of any WTI crude oil contract.

18.    All documents, including credit card receipts, reflecting meetings involving WTI crude oil contracts between any representative or employee of Defendants and any representative, employee, affiliate or agent of any of the following:  (a) any counterparty or potential counterparty to any transaction relating to United States domestic crude oil, including but not limited to, WTI crude oil; (b) any broker who executed trades in NYMEX WTI crude oil futures contracts; (c) any broker who executed trades in ICE WTI crude oil derivatives; (d) any broker who executed trades in physical WTI crude oil; (e) the NYMEX; (f) the ICE; (g) any manufacturer, producer, importer, refiner, supplier, trader, marketer, transporter, storer, distributor, retailer, purchaser, or end-user of WTI crude oil; or (h) any other person who invested, was invested in, or was interested in investing or purchasing NYMEX WTI crude oil futures contracts, ICE WTI crude oil derivatives, physical WTI crude oil, or other investments or purchases of any type whatsoever related to WTI crude oil.

19.    All documents reflecting interview notes, transcripts of interviews, or witness statements relating to transactions or investments in WTI crude oil contracts.

20.     All documents, including correspondence, relating to WTI crude oil contracts between Defendants and the CFTC.

21.     All documents, including correspondence, relating to WTI crude oil contracts between the Defendants and the NYMEX.

22.     All documents, including correspondence, relating to WTI crude oil contracts between Defendants and the ICE.

23.     All documents reflecting payments, conversations about payments, or agreements for payments by any Defendant or related entity to Defendant James T. Dyer.  This request includes but is not limited to documents sufficient to show Defendant Dyer's compensation for each operating year during the Relevant Period and the reasons for any bonus payments made to Defendant Dyer.

24.     All documents reflecting payments, conversations about payments, or agreements for payments by any Defendant or related entity to Defendant Nicholas J. Wildgoose.  This request includes but is not limited to documents sufficient to show Defendant Wildgoose's compensation for each operating year during the Relevant Period and the reasons for any bonus payments made to Defendant Wildgoose.

25.     All documents reflecting payments, conversations about payments, or agreements for payments by any Defendant or related entity concerning trading in Defendants' WTI crude oil book to any other person.  This request includes but is not limited to documents sufficient to show such other person's compensation for each operating year during the Relevant Period and the reasons for any bonus payments made to such other person.

26.     All documents reflecting any payments made to Defendant Dyer, Defendant Wildgoose or to any other Defendant or other person or entity by any other person or entity in connection with or relating to trading in WTI crude oil contracts.

27.     All documents analyzing general strategies to acquire long positions in NYMEX WTI crude oil calendar spreads.

28.     All documents analyzing general strategies to acquire short positions in NYMEX WTI crude oil calendar spreads.

29.     All documents analyzing general strategies to acquire physical WTI crude oil.

30.     All documents mentioning, referring or concerning "low" or "tight" or similar descriptions of supplies of physical WTI crude oil at Cushing, Oklahoma.

31.     All documents mentioning, referring or concerning "surplus" or similar descriptions of end-of-month balances of physical WTI crude oil at Cushing, Oklahoma.

32.     All documents performing technical analyses on the prices, price forecasting or other aspects of WTI crude oil contracts.

33.     All documents concerning credit arrangements with counterparties or potential counterparties relating to trading physical WTI crude oil.

34.     All documents reflecting who made the decisions for the trading in NYMEX WTI crude oil futures contracts, ICE WTI crude oil derivatives and/or physical WTI crude oil.

35.     All documents reflecting the certificate of organization, the bylaws, the investment procedures, or who was supposed to authorize or make transactions in WTI crude oil contracts on behalf of each Defendant.

36.     All documents reflecting the minutes of any investment committee or any other committee responsible for investment decisions relating to NYMEX WTI crude oil futures contracts, ICE WTI crude oil derivatives and/or physical WTI crude oil.

37.     All documents reflecting the role or position of Defendant Dyer and Defendant Wildgoose with respect to any fund, sub-fund, account or sub-account of any Defendant.

38.     All documents constituting or reflecting any organizational chart or other document describing who the officers, managers, directors or employees of each Defendant during the Relevant Period.

39.     All documents reflecting any agreement between and among Defendants, including but not limited to, any agreement in which any Defendant enjoyed the right to terminate investments, terminate the services of any Defendant and/or otherwise make decisions with respect to investments.

40.     All documents reflecting any ownership interest or contract of services or employment between Defendant Dyer or Defendant Wildgoose and any other Defendant or any related entity.

41.     All documents reflecting each and every title, position or role that Defendant Dyer or Defendant Wildgoose had or played with respect to each Defendant.

42.     All documents reflecting the due diligence that Defendants or Defendants' employees, representatives, officers or agents should perform before buying, holding, or selling investments, including commodity futures contracts.

43.     All documents sent to Defendant Dyer's or Defendant Wildgoose's email or instant message account(s) or otherwise received by Defendant Dyer or Defendant Wildgoose with respect to WTI crude oil or any WTI crude oil contract.

44.     All documents reflecting transactions by any Defendant in futures or options other than NYMEX WTI crude oil futures contracts which were made pursuant to any similar strategy to acquire long NYMEX futures calendar spread position(s), acquire large or dominant position(s) in a related physical commodity, acquire short NYMEX calendar spread position(s), and reduce or liquidate such large or dominant physical position(s).

45.     All documents that tracked the execution details of all Defendants' transactions in WTI crude oil contracts during the Relevant Period.

46.     All documents that reflect the identities of any NYMEX floor brokers who entered orders for NYMEX WTI crude oil futures contracts for Defendants or otherwise worked on Defendants' behalf.

47.     All documents concerning Defendants' acquisition of long NYMEX WTI crude oil calendar spread position, acquisition of large or dominant physical WTI crude oil position(s), acquisition of short NYMEX WTI crude oil calendar spread positions, and reduction or sale of such large or dominant physical WTI crude oil positions, including but not limited to, documents concerning effecting such transactions in order to have the "desired effect" on WTI crude oil spread prices.

48.     All documents reflecting any technical analysis relating to WTI crude oil contracts.

49.     All documents concerning Defendants' document retention policies, including, but not limited to, any policy concerning the destruction of documents.

50.     All documents, including any submission to the CFTC, that detail the identity of persons with an IM handle or email address which is not identifiable without such detail.

51.     All notes of conversations, memos, or any other record of communications concerning Defendants' trading, positions, or reasons for trading or positions in relation to WTI crude oil contracts.

52.     All documents showing which trades in WTI crude oil contracts were entered by: (a) Defendant Dyer; (b) Defendant Wildgoose; and (c) any employee, agent or other person acting on behalf of any Defendant.

53.     All documents concerning any communication with the CFTC concerning any investigation (formal or informal) into Defendants' activities in connection with WTI crude oil contracts.

54.     All documents concerning the percentages of the deliverable supplies of physical WTI crude oil at Cushing, Oklahoma.

55.     All documents concerning whether the prices of NYMEX WTI crude oil futures contracts were inflated or depressed.

56.     All documents concerning whether Defendants' trades in NYMEX WTI crude oil futures contracts, ICE WTI crude oil derivatives and/or physical WTI crude oil inflated or depressed NYMEX WTI crude oil futures contracts prices.

57.     All agreements between any Defendant and any WTI crude oil manufacturer, producer, importer, refiner, supplier, trader, marketer, transporter, storer, distributor, retailer, purchaser, or end-user, or other persons or entities with businesses involving WTI crude oil.

58.     All documents relating to Defendants' commercial need for WTI crude oil during the Relevant Period.

59.     All documents relating to Defendants' large or dominant physical WTI crude oil positions during the Relevant Period.

60.     All documents relating to Defendants' refusals to sell or liquidate any portion of their large or dominant physical WTI crude oil positions prior to the expiry of a near month futures contract during the Relevant Period.

61.     All documents relating to sales of Defendants' large or dominant physical WTI crude oil positions, including but not limited to, sales within the "cash windows" during the Relevant Period.

62.     All documents relating to sales or liquidation of Defendants' long WTI crude oil calendar spread positions during the Relevant Period.

63.     All documents relating to Defendants' estimates or predictions of the physical WTI crude oil balances at Cushing, Oklahoma in connection with Defendants' sales or liquidation of Defendants' physical crude oil positions during the Relevant Period.  This requests includes but is not limited to documents referring to the "inevitable puking" of Defendants' physical WTI crude oil position.

64.     All documents relating to the effect of Defendants' sales or liquidation of Defendants' physical WTI crude oil positions deliverable in any month upon the cash and/or derivatives market for WTI crude oil during the Relevant Period.

65.     All documents relating to Defendants' awareness and/or knowledge of physical WTI crude oil market move(s) from backwardation to contango on the last day(s) of the "cash windows" during the Relevant Period.

66.     All documents reflecting Defendants' awareness and/or knowledge that the sale, reduction or liquidation of their large or dominant physical WTI crude oil positions during the "cash windows" would result in losses to Defendants.

67.     All documents relating to the effects upon Defendants' NYMEX WTI crude oil futures positions resulting from Defendants' building, holding and liquidation of Defendants' physical WTI crude oil positions.

68.     All documents reflecting Defendants' awareness and/or knowledge that high prices of WTI crude oil calendar spreads would be temporary because Defendants would sell, reduce and/or liquidate their physical WTI crude oil positions during the "cash windows."

69.     All documents reflecting Defendants' awareness and/or knowledge of WTI crude oil prices during the "cash windows."

70.     All documents relating to the widening and/or the narrowing of NYMEX WTI crude oil calendar spreads during the Relevant Period.  This request includes but is not limited to Defendant Wildgoose's acknowledgment around March 25, 2008 that WTI crude oil "spreads came off with may/june but not as much as hoped."

71.     All documents relating to Defendants learning on or about April 17, 2008 that the CFTC was investigating Defendants' activities in WTI crude oil contracts.

72.     All documents relating to Defendants selling physical WTI crude oil during the cash windows.

73.     All documents relating to Defendants' profits in Defendants' WTI crude oil contract positions.

74.     All documents relating to Defendants' response to their leaning on or about April 17, 2008 that the CFTC was investigating Defendants' activities in connection with WTI crude oil markets.

75.     All documents reflecting communications involving the NYMEX including requests for exemptions from NYMEX WTI crude oil position or reporting limits.

76.     All documents discussing profitable trading strategies, including publications by any Defendant, and specifically including any such documents which discuss driving the price of any commodity to higher prices and then back down, and acquiring long exchange-traded calendar spread positions, large or dominant positions in related physical commodities, acquiring short exchange-traded calendar spread positions, and reducing or liquidating such related physical commodity positions during "cash windows" in order to profit therefrom.

77.     All documents reflecting futures commission merchants which were used by the Defendants to purchase or sell any NYMEX WTI crude oil futures contracts.

78.     All documents, including drafts, of the Defendants' compliance manuals, memoranda or proposals.  This request includes, but is not limited to, any documents referring or relating to acquiring long exchange-traded calendar spread positions, large or dominant positions in related physical commodities, acquiring short exchange-traded calendar spread positions and reducing or liquidating such related physical commodity positions during "cash windows", manipulative trades or other types of manipulative conduct.

79.     All practice manuals, procedures, or compliance manuals for any Defendant or related entity.

80.     All reports to the board of directors or other board of managers or supervisors of any Defendant.  The request includes, but is not limited to, any reports that mention trading in WTI crude oil contracts or that review or refer to manipulative or the simultaneous or near-simultaneous acquisition of long and short exchange-traded calendar spread positions and physical commodity positions and the sale or reduction of such physical commodity positions during "cash windows", or other trading patterns.

81.    All documents that reflect any contract (including, but not limited to, management contracts) between and among any of the Defendants relating to WTI crude oil contracts.

82.    All documents that reflect the relevant governing documents for any Defendant and his, her or its relations with any other Defendant.

83.    All documents and all communications concerning the termination, resignation, or departure of Defendant Dyer and/or Defendant Wildgoose, including all internal and external communications, emails, and instant messages, as well as all termination and/or severance-related documents, including payments, severance payment, or any other monetary or non-monetary benefit of any type or kind given to or bestowed on Defendant Dyer and/or Defendant Wildgoose.

84.    Any and all documents, communications, emails and instant messages concerning the facts and circumstances underlying the action *U.S. Commodity Futures Trading Commission v. Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose and James T. Dyer,* No. 11 Civ. 3543 (S.D.N.Y.), including, without limitation, communications to the Defendants' insurers and/or underwriters.

85.    To the extent not already requested or produced, all documents and data you produced in response to any investigation by or request from a local, state or federal governmental agency or entity concerning your trading of WTI crude oil contracts, and any communications concerning these documents.

86.    All documents concerning Defendants' transactions in WTI crude oil contracts.

87.    All transaction data maintained on any electronic databases concerning your transactions in WTI crude oil contracts.

88.      All communications, including e-mails and instant messages, concerning the trading of WTI crude oil contracts.  This Request includes, but is not limited to, all communications sent to or received by James Dyer and/or Nicholas Wildgoose.

89.      All documents concerning or containing any communications by or between any employees, agents or other persons who traded WTI crude oil contracts.

90.      All documents from the personnel files of James Dyer and/or Nicholas Wildgoose, including, but not limited to: (a) the resume or curriculum vitae of each such person; (b) all documents concerning any disciplinary action or reprimands considered or taken by you or any regulatory agencies against them, whether orally or in writing; (c) all documents concerning any changes of employment, employment status, title or position of any such person; (d) all documents concerning their compliance or their failure to comply with any of your internal policies and procedures, including any code of conduct and/or risk management policies; (e) all documents concerning their compliance or their failure to comply with any state rules, regulations and/or procedures concerning the trading of WTI crude oil contracts; and (f) any other information previously raised or which could be raised by you concerning their credibility.

91.      All documents concerning gains or losses resulting from your trading of WTI crude oil contracts.

92.      All documents reflecting the daily mark-to-market value of your WTI crude oil contracts.

93.      All documents and all communications concerning each Defendant's revenues and profits for entering into, or assisting with, WTI crude oil contracts on behalf of any Defendant or related entity.

94.      All documents concerning your risk management policies or procedures.

95.     Documents sufficient to identify each of the individuals responsible for implementing, overseeing, reviewing, and enforcing your risk-management policies or procedures.

96.     All documents reflecting meetings of any of your risk-management personnel, including agendas, meeting minutes, and any documents disseminated in connection with such meetings.

97.     All documents concerning your calculation of value at risk ("VAR") for your transactions or positions in WTI crude oil contracts on a daily, monthly and annual basis.  If you calculated or evaluated VAR or risk on any basis in addition to, or instead of, daily, monthly, and annually, provide, in addition to the documents relating to daily, monthly, and annual calculations or evaluations, documents showing those other calculations or evaluations.

98.     All documents concerning any calculation of risk, whether denominated VAR or not, resulting from your transactions or positions in NYMEX WTI crude oil futures contracts, and other WTI crude oil contracts.

99.     All documents concerning any excursions from VAR or other risk limits, and any violations of any of your risk limits or policies, including documents concerning any action taken as a result of such excursion or violation.

100.     All documents concerning your policies, procedures and strategies for trading NYMEX WTI crude oil futures contracts, and other WTI crude oil contracts.

101.     Any and all business plans, business strategies, meeting minutes, or management reports relating to your trading of WTI crude oil contracts and all communications concerning those documents.

102. All contracts, agreements or arrangements with any party relating to your trading of WTI crude oil contracts, and all communications concerning those documents.

103. All documents concerning revenues and costs (whether actual, standard, budgeted, or forecasted), including summaries and analyses thereof, of your trading of WTI crude oil contracts, and all communications concerning those documents.

104. All marketing or advertising materials, including, without limitation, press releases, speeches, press conferences, marketing materials, advertisements, business plans, e-mail, and all other internal communications, concerning your trading of WTI crude oil contracts.

105. All documents concerning projected cost and revenue estimates from your trading of WTI crude oil contracts.

106. All documents concerning regulatory or legal compliance in connection with WTI crude oil contracts trading practices by you, or by your traders generally. This request includes any documents concerning your compliance with orders or instructions from NYMEX, CFTC, or any other regulatory body or government agency, and all communications regarding such documents.

107. Any internal review or audit of any aspect of your trading in WTI crude oil contracts, whether or not performed in response to a request from, or investigation by NYMEX, CFTC, or any regulatory body or government agency, and any communications concerning those documents.

108. Any requests for document(s), subpoena(e) (other than grand jury subpoena), or request(s) for information you received from any regulatory body or government agency regarding your trading of WTI crude oil contracts, and all communications concerning those documents.

109.    Provide all documents concerning all prior investigations, inquiries, and requests by or from the NYMEX, ICE or any other exchange, or the CFTC or any other regulatory body, concerning your transactions in WTI crude oil contracts.

110.    Any record of payment to or from another entity engaged in the trading of WTI crude oil contracts, including documents identifying the reason for the payment, and all communications concerning those documents.

111.    All documents received from or sent to any other company or entity involved in trading of WTI crude oil contracts.

112.    All documents reflecting the annual compensation of your senior executives, officers, and WTI crude oil traders, including bonuses and other incentive compensation.

113.    All agreements, or other documents, constituting, reflecting or referring to the provision of stock options, bonuses, and incentive compensation to your senior executives, officers, and WTI crude oil futures and spot traders.

114.    All documents concerning any analyses of your trades of WTI crude oil contracts, and their effect on the price of WTI crude oil contracts.

115.    Provide all of your policies, procedures, codes of conduct, and codes of ethics that apply to trading of WTI crude oil contracts, and all communications concerning those documents.

116.    Documents sufficient to identify all of your directors, executives, officers, and WTI crude oil futures and spot traders during the Relevant Period, including any and all organizational charts.

117.    All articles of incorporation, operating agreements, bylaws, or other documents regarding your status as a limited liability company, limited liability corporation, limited partnership, S corporation, company or other business entity.

118.    All documents concerning Defendant James Dyer's and Defendant Nicholas Wildgoose's duties and responsibilities with respect to each of the other Defendants.

119.    All documents relating to the organization, operations and corporate structure of the entities comprising Defendants, and the relationship and interaction between such entities.

120.    All documents concerning performance and net asset value reports generated by Defendants.

121.    All documents provided by you to any person in connection with any attempt to sell or the sale or disposal of your WTI crude oil contracts, and all communications regarding those documents.

122.    A copy of each primary or excess insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of any judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy any such judgment.  Documents responsive to this Request shall be produced without regard to date, *i.e.* for all dates when any of the business entity Defendants were in existence.

123.    To the extent not otherwise produced in response to any Request herein, all computer files or data concerning your trading in WTI crude oil contracts, including without limitation files or data evidencing such trades, analyzing such trades, summarizing such trades, or concerning the execution of such trades.

124.   All documents concerning reports or other communications disseminated to investors in or stakeholders/shareholders of the Defendants, including without limitation, any and all drafts or alternative versions of same.

125.   All documents concerning the trading of NYMEX WTI crude oil futures contracts, ICE WTI crude oil derivatives, and WTI crude oil market or spot purchases and/or sales sent to or received from any:

    a.   futures commissions merchant;

    b.   introducing broker;

    c.   commodity trading adviser;

    d.   commodity pool operator;

    e.   floor broker;

    f.   any associated person as defined by the CFTC; or

    g.   any broker, commodity broker or person who provided the services of a broker, agent, or intermediary of any kind.

126.   All documents or communications concerning the United States domestic crude oil industry, trading of physical crude oil and/or trading of NYMEX WTI calendar spreads with any of the following entities, their affiliates and/or agents thereof during the Relevant Period:

| | |
|---|---|
| Argus Media Ltd. | Merrill Lynch Commodities, Inc. |
| Axis Brokerage | Morgan Stanley Capital Group Inc. - New York |
| Barclays PLC | National Cooperative Refining Association |
| BNP Paribas | New York Mercantile Exchange (NYMEX) |
| BP Oil Supply Company | Nexen Inc. |
| Cargill | Occidental Petroleum Company |
| Chevron Products Company | Plains All American Pipeline LP |
| Conagra Trade Group, Inc./Gavilon | Platts |
| ConocoPhillips Company | Saracen Energy |
| CVR Energy Inc. | Sempra Energy Trading |
| Delek U.S. Holdings, Inc. | Shell Trading (US) Company |

| | |
|---|---|
| Enbridge Energy Partners, LP | Statoil ASA |
| Exxon Mobil Corporation | Sun Refining and Marketing Company |
| Exxon Mobil Corporation | Suncor Energy |
| Holly Frontier Corporation | Sunoco Partners LLC |
| Houston Street | Syntex Brokers |
| ICE | TEPPCO Partners LP |
| Koch Supply and Trading | Texon |
| Lehman Brothers | TFS Brokers |
| Link Brokers | Total Oil Trading SA |
| Lukoil Oil Company | Trafigura Ltd. |
| Marathon Petroleum Company | UNITED ICAP Brokers |
| Mercuria Energy Trading, Inc. | Vitol SA Geneva |

127.   All documents sent to or received, including communications, between you and NYMEX and the CFTC concerning the trading of NYMEX WTI crude oil futures contracts.

128.   All documents concerning any contracts or agreements between or among you and any other Defendant, including limited liability company agreements and advisory agreements. Documents responsive to this Request shall be produced without regard to date, *i.e.* for all dates when each of the business entity Defendants were in existence.

129.   Documents sufficient to establish the sums of money distributed by and among any of the Defendants or any related entity to your stakeholders, shareholders or investors during the period June 1, 2008 until the date of your response.

130.   All documents concerning any contracts or agreements between you and James Dyer and Nicholas Wildgoose concerning the trading of NYMEX crude oil contracts. Documents responsive to this Request shall be produced without regard to date, *i.e.* for all dates when the business entity Defendants were in existence.

131.   All documents concerning any request by any Defendant or related entity for a credit limit increase.

132.   All floor tickets, trading cards and/or order tickets (executed, unexecuted and cancelled) concerning or involving any NYMEX WTI crude oil futures contracts for each trading day during the Relevant Period.

133.   All documents which form a basis for each of Defendants' denials of the allegations in Plaintiffs' Consolidated Amended Class Action Complaint set forth in Defendants' Answer and Affirmative Defenses To The Consolidated Amended Class Action Complaint dated January 17, 2013 [Docket No. 87].

134.   All documents which form a basis for each of Defendants' "Affirmative Defenses" set forth in Defendants' Answer and Affirmative Defenses To The Consolidated Amended Class Action Complaint dated January 17, 2013 [Docket No. 87].

135.   All document requests, interrogatories, subpoenas and any other discovery issued by or to the Defendants in *U.S. Commodity Futures Trading Commission v. Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose and James T. Dyer,* No. 11 Civ. 3543 (S.D.N.Y.) and all responses, objections and any documents or other information produced in response thereto.  For the avoidance of doubt, this request includes, but is not limited to, all documents production by the CFTC to the Defendants in *U.S. Commodity Futures Trading Commission v. Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose and James T. Dyer,* No. 11 Civ. 3543 (S.D.N.Y.).

136.   All documents relating to Defendants' reliance on advice of counsel regarding the legality of their WTI crude oil contract trading during the Relevant Period.  For the avoidance of doubt, this request includes, but is not limited to, any documents relating to advice provided to Defendants by Timothy J. Carey, Esq.

Dated: New York, New York
April 16, 2013

/s/ Christopher Lovell
Christopher Lovell
Christopher M. McGrath
**LOVELL STEWART HALEBIAN JACOBSON LLP**
61 Broadway, Suite 501
New York, New York 10006
Telephone:    (212) 608-1900
Facsimile:    (212) 719-4775

/s/ Stephen D. Susman
Stephen D. Susman
**SUSMAN GODFREY LLP**
560 Lexington Avenue, 15th Floor
New York, New York 10022-6828
Telephone:  212-336-8330
Fax:  212-336-8340

/s/ Warren T. Burns
Warren T. Burns
Daniel H. Charest
David Shank
**SUSMAN GODFREY LLP**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: 214-754-1900
Fax: 214-754-1933

**Interim Co-Lead Counsel**

Exhibit B to the Declaration of Lawrence Dreyfuss

| Bates Begin | Bates End |
| --- | --- |
| PLA-2010P-0000001 | PLA-2010P-0000021.0004 |
| PLA-2010S-0000001 | PLA-2010S-0000303.0001 |
| PLA-2010-VONJ-0000001 | PLA-2010-VONJ-0000008 |
| PLA-2010-ZAGH-0000001 | PLA-2010-ZAGH-0000214 |
| PLA-2011-DEAJ-0000001 | PLA-2011-DEAJ-0000004 |
| PLA-2011-KEFJ-0000001 | PLA-2011-KEFJ-0000130 |
| PLA-2011-MARV-0000001 | PLA-2011-MARV-0000014 |
| PLA-2011-MCBM-0000001 | PLA-2011-MCBM-0000015 |
| OS-217-01-000001 | OS-217-01-000012 |
| PLA-0000228 | PLA-0019236 |
| PLA-COIG-000000001 | PLA-COIG-000021631 |
| PLA-COIT-000000001 | PLA-COIT-000025358 |
| PLA-DEAJ-000000001 | PLA-DEAJ-000131860 |
| PLA-DEAJ-LTR-000001 | PLA-DEAJ-LTR-000004 |
| PLA-FRYJ-000000001 | PLA-FRYJ-000053863 |
| PLA-GORM-000000001 | PLA-GORM-000005864 |
| PLA-IFEG-000000001 | PLA-IFEG-000264286 |
| PLA-JACJ-000000001 | PLA-JACJ-000045040 |
| PLA-JALK-000000001 | PLA-JALK-000038396 |
| PLA-KEFJ-000000001 | PLA-KEFJ-000045147 |
| PLA-KELD-000000001 | PLA-KELD-000000341 |
| PLA-LEEJ-000000001 | PLA-LEEJ-000022902 |
| PLA-LEEJZAGH-000000001 | PLA-LEEJZAGH-000000002 |
| PLA-MCCS-000000001 | PLA-MCCS-000033899 |
| PLA-MOVC-000000001 | PLA-MOVC-000030036 |
| PLA-OLIC-000000001 | PLA-OLIC-000006845 |

| Bates Begin | Bates End |
| --- | --- |
| PLA-OLIC_KELD-000000001.001 | PLA-OLIC_KELD-000000001.002 |
| PLA-PEFH-000000001 | PLA-PEFH-000020445 |
| PLA-SANR-000000001 | PLA-SANR-000002400 |
| PLA-VONJ-000000001 | PLA-VONJ-000048429 |
| PLA-ZAGH-000000001 | PLA-ZAGH-000033463 |
| PLAI-COIT-000000001 | PLAI-COIT-000036534 |
| PLAI-DEAJ-000000001 | PLAI-DEAJ-000004456 |
| PLAI-FRYJ-000000001 | PLAI-FRYJ-000000806 |
| PLAI-IFEG-000000001 | PLAI-IFEG-000001317 |
| PLAI-JACJ-000000001 | PLAI-JACJ-000056044 |
| PLAI-JALK-000000001 | PLAI-JALK-000063752 |
| PLAI-KEFJ-000000001 | PLAI-KEFJ-000003603 |
| PLAI-LEEJ-000000001 | PLAI-LEEJ-000009730 |
| PLAI-MCCS-000000001 | PLAI-MCCS-000008013 |
| PLAI-MOVC-000000001 | PLAI-MOVC-000002887 |
| PLAI-VONJ-000000001 | PLAI-VONJ-000024001 |
| PLAI-ZAGH-000000001 | PLAI-ZAGH-000036895 |
| PLAINS-01 000001 | PLAINS-01 001329 |
| PLAS-CF-000006614 | PLAS-CF-000007234 |
| PLA-COIG-000009509 | |
| PLA-COIT-000004781 | |

# EXHIBIT B

# Vinson&Elkins

Hilary L. Preston hpreston@velaw.com
Tel +1.212.237.0129  Fax +1.212.237.0000

July 18, 2013

**By Hand Delivery**

The Honorable William H. Pauley III
United States District Court Judge
Southern District of New York
500 Pearl St.
New York, NY  10007-1312

Re:     *CFTC v. Parnon, et al.*
        Master File No. 11 CIV. 3543 (WHP)

Dear Judge Pauley:

Pursuant to paragraph III.A.iv of your Honor's practices, non-party Plains All American Pipeline, L.P. ("Plains"), the U.S. Commodity Futures Trading Commission ("CFTC") and Defendants Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose and James T. Dyer ("Defendants") submit this joint letter regarding a discovery dispute among the parties. Last week, the parties advised the Court of a dispute regarding the treatment of confidential non-party documents exchanged in discovery. Pursuant to Local Rule 37.2 and your Honor's practices, on July 16, 2013 at 3:45 p.m., counsel for the parties and Plains attempted to resolve this dispute via telephone conference, and were able to narrow the scope of the dispute.[1]  The CFTC agreed to enter into an agreement with Plains, under which it will agree to abide by the confidentiality designations made by Plains under the Protective Order (Dkt. No. 59), and to notify Plains of any future objections or challenges to the designations so that Plains may take steps to protect its information.  The terms of that agreement will be submitted to the Court in short order.  Defendants agreed that non-party documents are subject to the Protective Order and that non-parties, including Plains, may designate their documents thereunder and receive the protections of the Order upon signing Exhibit A to the Order.

---

[1] Elizabeth Bradshaw and Mark Haskell participated in the call on behalf of Defendants; Christine Ryall participated on behalf of the CFTC; Annita Cohen and Crystal Y'Barbo participated on behalf of Plains; and Warren Burns participated on behalf of the Plaintiffs in the putative class action against Defendants, case no. 11 Civ. 3600.  Tracy Schaffer, counsel for non-party objector Chevron, and Greg Kaufman, counsel for non-party Castleton, also participated in the call.  The call lasted approximately twenty minutes.

Vinson & Elkins LLP  Attorneys at Law

Abu Dhabi  Austin  Beijing  Dallas  Dubai  Hong Kong  Houston  London  Moscow
New York  Palo Alto  Riyadh  San Francisco  Shanghai  Tokyo  Washington

666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Tel +1.212.237.0000  Fax +1.212.237.0100  www.velaw.com

V&E

A dispute remains among the parties, however, as to the extent to which Highly Confidential non-party information may be disclosed.  The Protective Order currently provides that information designated Highly Confidential, whether belonging to a party or to a non-party, may be disclosed, subject to the terms of the Protective Order, to the following persons:

(a) attorneys of record;

(b) one employee of Defendants;

(c) retained experts;

(d) the Producing Party; authors, senders, addresses or recipients (even if the person refuses to agree to abide by the terms of the Protective Order);

(e) any third party or party employee witness (even if the person refuses to agree to abide by the terms of the Protective Order); and

(f) court personnel.

Defendants object to the above characterization of the provisions of paragraph D of the Protective Order as incomplete and potentially misleading.  Plains believes that this designation does not adequately protect its confidential and proprietary documents that have been designated Highly Confidential and produced to Defendants, because it permits those documents, which may include information that is wholly irrelevant to this action, to potentially be disclosed to its competitors and persons who refuse to abide by the terms of the Order.  Accordingly, Plains requested that the CFTC and Defendants agree to enter the attached modified Protective Order. The CFTC and Defendants refused.

With respect to the first point, Plains is prohibited from sharing certain sensitive information with competitors.  Plains understands that the Plains information produced to Defendants by the CFTC includes such competitively sensitive information and has been designated as Highly Confidential.  Yet, the Protective Order currently permits an employee of Defendants to view such competitively sensitive information of Plains.  Plains advised the CFTC and Defendants that it objects to this practice and requested that the parties agree to include a new category of Highly Confidential information in the Protective Order that is accessible to outside counsel, experts and court personnel only.  Defendants advised that they would not agree to modifying the Protective Order in this manner and instead maintain that the Protective Order, as negotiated by the parties to this action and entered by this Court, affords sufficient protections to parties and non-parties alike, while permitting Defendants to

V&E

defend themselves against the CFTC's claims without being unfairly or excessively limited in their ability to do so. According to Defendants, permitting one employee of Defendants, collectively, who has executed Exhibit A and agreed to be bound by the terms of the Protective Order, to review all discovery material and advise defense counsel, does not unfairly threaten the confidentiality of documents and information produced by Plains.

As to the second point, currently, the Protective Order permits the parties to disclose Plains' Highly Confidential information, which they concede is subject to the Protective Order, to third party witnesses and other persons who do not agree to abide by its terms. The CFTC and Defendants advised that they will "use reasonable best efforts" to cause third parties to execute Exhibit A to the Protective Order, as the Order requires, but that the Protective Order is written in this manner to ensure that the parties reserve the right to proceed with depositions if third parties beyond their control refuse to execute Exhibit A. Plains believes that the parties should not be permitted to disclose non-party Highly Confidential information to persons who refuse to abide by the Protective Order, even if the parties decide to share their own Highly Confidential information with these persons. Accordingly, it is Plains' position that a new category of Highly Confidential information should be included in the Protective Order that limits the disclosure of non-party Highly Confidential information to their attorneys of record and experts – i.e. persons within their control – and court personnel.

Defendants' position is as follows: Defendants have a number of objections to the modified protective order proposed by Plains, including to the limitations placed on the use of "Highly Confidential Non-Party" information. The proposed modifications would delay discovery in this matter, and would result in impractical and prejudicial restrictions on discovery, court filings and court proceedings in this matter. Unfortunately, the space available to Defendants in this joint letter does not permit a full discussion of Defendants' objections. If this Court is inclined to consider the modifications to the Protective Order proposed by Plains, Defendants request an opportunity to present their objections to the Court in full.

The CFTC's position is that the Protective Order currently in force is adequate to protect sensitive information in this case, particularly in light of the agreement the CFTC has reached with Plains regarding the treatment of Plains information designated as Confidential or Highly Confidential. The CFTC accordingly believes the Protective Order should not be modified in the manner Plains has proposed.

Counsel attempted in good faith to resolve this dispute, and have been unable to reach a resolution. Plains therefore respectfully requests a conference with the Court to discuss its

V&E

proposed modified protective order, or in the alternative, permission to file a formal motion for a protective order.

Respectfully submitted,

Hilary L. Preston
Armita S. Cohen
*Counsel for Plains All American Pipeline, LP*

Christine M. Ryall
Jonathan Robell
*Counsel for CFTC*

Elizabeth Bradshaw
Mark Haskell
*Counsel for Defendants*

cc:     Warren Burns (attorney for Plaintiffs) (via email)

# EXHIBIT C

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Texas

| | | |
|---|---|---|
| In re: Crude Oil Commodity Futures Litigation, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   Master File No.11-cv-3600(WHP) |
| | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Southern District of New York          ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  John vonBerg
     c/o Vinson & Elkins LLP, Counsel for Plains All American Pipeline, LP

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Winston & Strawn<br>1111 Louisiana, 25th Floor<br>Houston, Texas 77002 | Date and Time:<br>10/15/2013 9:00 am |
|---|---|

The deposition will be recorded by this method:   <u>Stenographer and videographer</u>

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   <u>10/02/2013</u>

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____<u>Defendants</u>_____
_____ , who issues or requests this subpoena, are:
Elizabeth M. Bradshaw, Winston & Strawn, 35 W. Wacker Drive, Chicago, Illinois 60601; ebradshaw@winston.com;
(312) 558-6231

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  Master File No.11-cv-3600(WHP)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                    *Server's signature*

                                                    _____
                                                    *Printed name and title*

                                                    _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# EXHIBIT D

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Texas

| In re: Crude Oil Commodity Futures Litigation, | ) |
| --- | --- |
| *Plaintiff* | ) |
| v. | ) |
| | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   Master File No.11-cv-3600(WHP)

(If the action is pending in another district, state where:

Southern District of New York          )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Hugo Zagaria
    c/o Vinson & Elkins LLP, Counsel for Plains All American Pipeline, LP

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place:  Winston & Strawn<br>1111 Louisiana, 25th Floor<br>Houston, Texas 77002 | Date and Time:<br>10/16/2013 9:00 am |
| --- | --- |

The deposition will be recorded by this method:  _Stenographer and videographer_

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    _10/02/2013_

CLERK OF COURT

_____          OR          _____
Signature of Clerk or Deputy Clerk                              Attorney's signature

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*    __Defendants__
_____ , who issues or requests this subpoena, are:
Elizabeth M. Bradshaw, Winston & Strawn, 35 W. Wacker Drive, Chicago, Illinois 60601; ebradshaw@winston.com;
(312) 558-6231

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   Master File No.11-cv-3600(WHP)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                            *Server's signature*

                                          _____
                                            *Printed name and title*

                                          _____
                                            *Server's address*

Additional information regarding attempted service, etc:

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 (2) *Command to Produce Materials or Permit Inspection.*

 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

 **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 (3) *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

 **(i)** fails to allow a reasonable time to comply;

 **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

 **(iv)** subjects a person to undue burden.

 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

 **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 (1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 (2) *Claiming Privilege or Protection.*

 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

 **(i)** expressly make the claim; and

 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).